

# THE ATTORNEY GENERAL
## OF TEXAS

April 24, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable William L. Ferguson
County and District Attorney
Rusk County Courthouse
Henderson, Texas   75652

Opinion No.   JM-1042

Re:   Authority of the Texas
Department of Health to  is-
sue  to  a  non-physician  a
permit to dispense synthetic
narcotics   (RQ-1621)

Dear Mr. Ferguson:

You ask whether the Department of Health is  authorized
to issue permits for prescribing and administering synthetic
narcotic drugs  to  drug dependent  persons  under  V.T.C.S.
article 4476-11  to  corporations formed  by  non-physicians
which employ  physicians  to perform  the  medical  services
rendered to the corporations' clients.  We conclude that the
Department of Health does not have such authority.

Section 4(a) of  article 4476-11  provides in  relevant
part:

> Any physician licensed by the Texas  State
> Board of  Medical Examiners  or any  institu-
> tion,  public  or   private,  organized   and
> operated under the laws of this state for the
> purpose  of  providing  health  services  may
> apply to the department on forms approved  by
> the department  for  a  permit  to  prescribe
> and administer synthetic  narcotic  drugs  to
> drug-dependent persons.  The department shall
> issue  a  permit   to  applicants   qualified
> according  to  its  rules,  regulations,  and
> standards.

Arrangements  by   which   a   corporation   formed   by
non-physicians employs physicians to render medical services
to the corporation's clients consistently have been held  to
constitute both  the unlawful  practice of  medicine by  the
corporation and a violation by the employee physician of the

allowing another to use his license or certificate to practice medicine in this state," and in section 3.08(15) on "aiding or abetting, directly or indirectly, the practice of medicine by any person, partnership, association, or corporation not duly licensed to practice medicine."[1] See Garcia v. Texas State Bd. of Medical Examiners, 384 F.Supp. 434 (W.D. Tex. 1974), aff'd, 421 U.S. 995 (1975); Flynn Bros., Inc. v. First Medical Assoc., 715 S.W.2d 782 (Tex. App. - Dallas 1986, writ ref'd n.r.e.); Watt v. Texas State Bd. of Medical Examiners, 303 S.W.2d 884 (Tex. Civ. App. - Dallas 1957, error ref'd), cert. denied, 356 U.S. 912 (1958); F. W. B. Rockett, M.D. v. Texas State Bd. of Medical Examiners, 287 S.W.2d 190 (Tex. Civ. App. - San Antonio 1956, writ ref'd n.r.e.); Attorney General Opinion WW-278 (1957).[2]

The Garcia court articulated the policy considerations underlying these restrictions on the "corporate practice of medicine" as follows:

> Without licensed, professional doctors on Boards of Directors, who and what criteria govern the selection of medical and paramedical staff members? To whom does the doctor owe his first duty -- the patient or corporation? Who is to preserve the confidential nature of the doctor-patient relationship? What is to prevent or who is to control a private corporation from engaging in mass media advertising in the exaggerated fashion so familiar to every American? Who is to dictate the medical and administrative procedures to be followed?

---

1. Section 3.08 makes such conduct grounds for the board's refusal to admit a person to its examinations or to issue a license or renewal license to practice medicine. Section 3.07(f) provides that conduct described in inter alia subsections (12) and (15) of section 3.08 is unlawful.

2. We note that section 3.06(12) authorizes the board to exempt certain activities from the application of the Medical Practice Act. We find no indication that the board has exempted the activities of such corporations as you refer to in your request.

> Where do budget considerations end and patient care begin?

*Garcia*, at 440. *See also* the discussion in *Flynn Brothers*, quoting with approval the above language from *Garcia*, at 785.

A letter-brief submitted in response to your request suggests that the above-quoted language of article 4476-11 "provides a clear indication of the Legislature's intent to provide the Health Department with this authority, provisions of the Medical Practice Act of Texas notwithstanding." We disagree. Acts *in pari materia* are to be read together as though they were parts of one and the same law, and their provisions harmonized if possible so as to give effect to both. *See* 53 Tex. Jur. 2d *Statutes* § 186, and authorities cited there. *See also* Gov't Code §§ 311.025, 311.026 (providing for the harmonization, if possible, of different statutory provisions). We think that the provisions of section 4(a) of article 4476-11 for the issuance by the Department of Health of a permit to "any institution, public or private, organized and operated under the laws of this state for the purpose of providing health services," must be read together with the restrictions in the Medical Practice Act on the provision of health services by corporations. An institution not in compliance with the Medical Practice Act, because it is formed by non-physicians and employs physicians to render medical services to its clients, is not "an institution organized and operated under the laws of this state for the purpose of providing health services" within the meaning of article 4476-11 and is thus not eligible to be issued a permit under that article by the Department of Health.

The letter-brief submitted in response to your request also points to rules adopted by the Federal Food and Drug Administration and Drug Enforcement Administration. *See* 21 C.F.R. § 291.505. Those rules implement the provisions of the United States Code, volume 21, section 823(g), which requires "practitioners who dispense narcotic drugs to individuals for maintenance treatment or detoxification treatment" to obtain separate registration from the U.S. Attorney General under standards established by the Secretary of the Department of Health and Human Services and the Attorney General. Subsection (c) of section 291.505 of the Code of Federal Regulations provides in part with regard to applicants for registration that:

> An individual listed as program sponsor for a treatment program using methadone need not personally be a licensed practitioner but shall employ a licensed physician for the position of medical director.

Section 291.505 was "adopted by reference" in rules promulgated by the Department of Health at 25 T.A.C. section 229.141 among rules adopted to implement article 4476-11[3], V.T.C.S.

The letter-brief suggests that

> even if it were determined that the prohibition of the corporate practice of medicine under state law must be applied to physicians who are employed by nonphysician permit-holders under Article 4476-11, the Supremacy Clause of the U. S. Constitution would seem to require that a Texas statute which frustrates or conflicts with the lawful objective of a federal statute may not be enforced.

Again, we disagree. The United States Code, volume 21, section 903, provides with respect to the provisions of subchapter I, chapter 13, title 21, of which the above referenced section 823(g) is a part, as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

---

3.   Section 229.141 refers to 21 C.F.R. § 310.505. That regulation was redesignated as 21 C.F.R. § 291.505 in 1977. See 42 Fed. Reg. 46698.

We find no "positive conflict" between the federal registration requirement of section 823(g) as implemented by, _inter alia_ 21 C.F.R. section 291.505(c), and the separate state permitting requirements of article 4476-11 as limited by the provisions of the Medical Practice Act.  We think that section 9.03 indicates that the federal standard for federal registration of applicants would not preempt or otherwise invalidate more restrictive state law governing a state's issuance of a separately required state permit. _See_ _Nichols v. Board of Pharmacy_, 657 P.2d 216 (Or. Ct. App. 1983, pet. denied), (section 9.03 "expressly permits additional state regulation," at 219).  _See also_ 21 C.F.R. § 291.505(c)(5) (providing that treatment programs to be approved for federal purposes "must conform to all State requirements" for conducting such programs).

## S U M M A R Y

The Department of Health has no authority to issue permits to prescribe and administer synthetic narcotic drugs to drug dependent persons under V.T.C.S. article 4476-11, to corporations formed by non-physicians which employ physicians to render the medical services in question.

Very truly yours

**J I M   M A T T O X**
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General